### C. D. GRIFFIN v. MINNESOTA SUGAR COMPANY.[1]

March 6, 1925.

No. 24,454.

**Rights of subsequent purchaser in good faith to future crops superior to rights of landlord under mortgage clause in unfiled lease.**

1. The rights of a landlord to future crops under a mortgage clause in a lease not filed, are postponed to the rights of a subsequent purchaser in good faith under section 8345, G. S. 1923.

**Purchaser of sugar-beet crop protected by statute.**

2. The contract here involved is construed to be an executory contract of a sugar-beet crop to be grown, and the purchaser of the crop, having paid a large part upon the contract in good faith without notice before the lease was filed, comes within the protection of the above statute.

**Defendant was subsequent good faith purchaser without notice.**

3. The evidence called for a finding that defendant was a subsequent good faith purchaser without notice.

**Finding that plaintiff consented to sale to defendant not required.**

4. The evidence did not compel a finding that plaintiff consented to sale of the beets in question to defendant.

[1]Reported in 202 N. W. 445.

**Question not decided.**

 5. Whether defendant is protected as to payments made subsequent to the filing of the plaintiff's lease is not determined, since the question was not presented in the court below nor argued here.

 *Headnote 1. See Chattel Mortgages, 11 C. J. p. 517, § 193, p. 518, § 194.

 Headnote 2. See Chattel Mortgages, 11 C. J. p. 518, § 194.

 Headnote 3. See Chattel Mortgages, 11 C. J. p. 617, § 323.

 Headnote 4. See Chattel Mortgages, 11 C. J. p. 617, § 323.

 Headnote 5. See Appeal and Error, 3 C. J. p. 689, § 580; Appeal and Error, 4 C. J. p. 1069, § 3057.

Action in conversion in the district court for Renville county to recover $1,010. The case was tried before Baker, J., who directed a verdict in favor of plaintiff. From an order denying its motion for a new trial, defendant appealed. Reversed.

*Odell & Fahey*, for appellant.

*Freeman & Smith* and *Daly & Barnard*, for respondent.

HOLT, J.

Action in conversion tried to the court. The findings were in favor of plaintiff and defendant appeals from the order denying a new trial.

In September, 1920, plaintiff let his 240 acre farm by written lease, duly witnessed and acknowledged, to one Frank for the farming season of 1921, rent to be paid in cash, $600 October 15, 1921, and $555 December 15 following. The lease contained a chattel mortgage clause, to secure payment of the rent, covering all crops to be raised during the season of 1921. Frank went into possession. The lease was not filed for record until July 29, 1921. On February 28, 1921, Frank entered a contract with defendant to plant 40 acres of said farm to sugar beets that season and to cultivate, harvest, sell and deliver the same to defendant, and it agreed to purchase the same for a specific price. The contract is very lengthy, but the principal provisions are: Defendant was to furnish the seed at 25 cents per pound, the amount thereof to be deducted from the first payment of beets delivered; specifications

for planting, cultivating, harvesting and delivering the crop are set out, and if these were not followed defendant had the right to enter the land and handle and appropriate the crop at the stipulated price and deduct therefrom its expense; while the crop was growing Frank was to have the privilege of buying sugar for family use from defendant at wholesale prices; the price for the beets delivered to be not less than $6 per ton, with some additional amount upon certain contingencies, payable after they were accepted and delivered. Beets grown from seed furnished by defendant were all to be delivered to it and could not be mortgaged or disposed of without its consent; and all moneys advanced by defendant, Frank agreed to repay with 7 per cent interest, giving his promissory note to cover the amount of all such advances. At the same time that the contract was signed Frank also signed an instrument, called "Growers Application for Labor on Sugar Beets," authorizing defendant to procure beet workers to do certain parts in cultivating and harvesting the beets at specified prices to be paid the workers by it and also prescribing the manner in which Frank should cultivate and do the work not done by the workers procured by defendant. Before the lease was filed for record, defendant had furnished and paid out for seed and to workers upon the crop over $500 and for horse feed, cultivators and implements over $300. After the filing of the lease some more was paid out so that the whole beet crop of 168.30 tons, amounting to $1,009.82 at the agreed price, did not cover the amount advanced Frank, and for which he had given notes as the advances were made.

The findings are attacked in many particulars, but the pivotal questions seem to be these: First, does the contract of defendant give it rights to the beet crop superior to those acquired by plaintiff in virtue of the mortgage clause in the lease subsequently filed for record? Second, if not, does the evidence require the finding asked that plaintiff is estopped from claiming conversion because of implied consent to the sale and delivery of the beets to defendant?

1. The argument of defendant is this: Since the lease was not filed for record when the tenant made the contract to sell the sugar

beets to be raised, it was void as to defendant, the purchaser, under section 8345, G. S. 1923, which reads: "Every mortgage of personal property shall be void, as against the creditors of the mortgagor and subsequent purchasers and encumbrancers of the property in good faith, unless it appears that such mortgage was executed in good faith, and not for the purpose of hindering, delaying, or defrauding any creditor of the mortgagor, and unless, in addition thereto, the giving of such mortgage is accompanied by immediate delivery and followed by actual and continued change of possession of the mortgaged property, or, in lieu thereof, the mortgage is filed as hereinafter provided." Bank of Farmington v. Ellis, 30 Minn. 270, 15 N. W. 243, is cited which holds a mortgage first executed, but not filed until after a second mortgage was executed, void as to the latter, it being taken in good faith.

This would, no doubt, require a similar ruling here if defendant could claim as a mortgagee. There is, however, some difference between the legal standing of a mortgagee in a chattel mortgage and a purchaser of a future crop. Such mortgagee, under the law in this state, holds the legal title to the potential crop from the time the mortgage is given, whereas under a sales contract, like the one here under consideration, the legal title does not pass until the delivery. In other words, this is an executory contract of sale. However, the contract made was carried out by the parties, a delivery was made and accepted.

The Uniform Sales Act embraces sales of crops to be grown. In section 76 thereof it defines "goods" to include "emblements, industrial growing crops, and things attached to or forming part of the land which are agreed to be severed before sale or under the contract of sale." G. S. 1923, § 8450, subdivision 3 of section 5 of the act (section 8380, G. S. 1923) provides that "where parties purport a present sale of future goods, the agreement operates as a contract to sell the goods. So defendant had at least a valid contract to buy the beets, even though the title did not pass until the actual delivery. If plaintiff's mortgage clause in the lease was void as to defendant's contract when the latter was made, the subsequent filing of the lease cannot change the status of the parties

or affect their rights legal or equitable as against each other based upon their contracts, at least before the filing. That future crops may be mortgaged in this state is so well settled that the proposition need not be discussed. Minnesota Linseed Oil Co. v. Maginnis, 32 Minn. 193, 20 N. W. 85; Miller v. McCormick Harvesting Co. 35 Minn. 399, 29 N. W. 52; Hillsdale Distillery Co. v. Briant, 129 Minn. 223, 152 N. W. 265. As said in the Miller case concerning a mortgagee of crops to be grown: "He has a present vested right to have the crops when they come into actual existence." so it may be said of defendant in the present case, its contract vested it with a right to the beets when ready for delivery.

Williston, Sales, § 135, remarks: "Nearly all cases relate to mortgages, but, so far as concerns the legal title, there seems no difference, unless created by statute, between the power of the owner of land to mortgage and to sell the crops growing thereon." He also refers to the fact that, where the purchaser does not take possession, he is not protected by recording acts against subsequent innocent creditors or purchasers as is a mortgagee.

Plaintiff relies on Welter v. Hill, 65 Minn. 273, 68 N. W. 26, for the claim that future crops are not subject of sale. But that is a misapprehension of the case. The contest was between the purchaser of flax to be grown and an execution levied on the growing crop by a judgment creditor of the seller. It was held that the sale was an executory contract and did not vest title in the purchaser until the flax was delivered, hence the execution levied prior to delivery took precedence over the bill of sale. In the instant case title did not vest in defendant until delivery. But the difference between the two cases is that no recording or filing statute could be called to the assistance of the buyer in the Welter case; in the case at bar that statute holds plaintiff's mortgage clause void as to defendant, as a subsequent innocent purchaser. We do not think that the part of section 5 of the Uniform Sales Act above quoted should exclude defendant from the designation of a subsequent good faith purchaser within the protection of section 8345, G. S. 1923.

Defendant asked for a finding that it was such purchaser. This was denied. We think the record calls for a finding to that effect. The burden of proof was on defendant. But it is quite conclusively shown that this contract was obtained in the usual course of defendant's business, unattended by any suspicious circumstances, and a large consideration paid before any constructive notice by the filing of the lease was given of plaintiff's rights. In Bank of Farmington v. Ellis supra, the court, in regard to bearing this burden of proof, said: "The character and degree of proof required will depend much upon the situation and circumstances of each case. And, in cases of this kind, the fact of payment of a valuable consideration, where the transaction occurs in the ordinary course of business, and is free from suspicious circumstances, is generally considered sufficient to make out a prima facie case of good faith, and to devolve the burden of proving the affirmative fact of notice, if it exists, upon the opposite party."

Had defendant had any notice of the existence of the chattel mortgage clause in plaintiff's lease, no doubt this contract would not have been made nor any money paid thereunder. Defendant knew that plaintiff was the owner of the farm. The contract so recites. From this the conclusion may be drawn that Frank was his tenant or vendee, and that a lease or some contract existed between the two. But the inference is not permissible that defendant had or ought to have had knowledge of the existence of the chattel mortgage clause in the lease. Steelsmith v. Johannsen, 161 Minn. 529, 201 N. W. 917.

Our conclusion is that the written agreement between defendant and Frank, and of which the application to furnish help is a part, is an executory contract for the sale of the beets to be raised thereunder. The only other category in which to place the instrument would be as a chattel mortgage on the theory, as the court found, that the moneys were paid out as loans. Surely, if these moneys were paid out as loans, it. was in reliance upon the contract as securing the repayment. This would not be to plaintiff's advantage, for then there is more probability that moneys paid for horse feed and farm implements could be held secured, than to hold that such

moneys were advances upon the beet crop called for by the contract. A third construction is contended for by plaintiff, namely, that it is a contract of hire within Porter v. Chandler, 27 Minn. 301, 7 N. W. 142, 38 Am. Rep. 293. This is impossible. There is no similarity. It would be more appropriate to attempt to classify it with the contract in McNeal v. Rider, 79 Minn. 153, 81 N. W. 830, 79 Am. St. 437, and the cases therein referred to, which were held leases with chattel mortgage effect. We do not think the advances made by defendant should under the writings and surrounding circumstances be held loans unless such writings are also construed as made to secure the repayment of the loans. There can be no fair doubt that such moneys were paid upon the contract and in reliance thereon.

Plaintiff admits knowledge that Frank was intending to plant sugar beets on part of the farm when the lease was made. He knew that such beets were planted. He was present when the beets were harvested and loaded on cars. He says he then had an attorney to protect his interests. But nothing was done to prevent the marketing of the crop. Without objection defendant was permitted to take the beets and manufacture them into sugar. From these admissions defendant contends the court should have found that plaintiff consented to the disposition Frank made of the beets, that he waived his rights under the mortgage clause in the lease, and should be estopped from asserting conversion. We do not regard the evidence such as to compel a finding of consent, waiver or estoppel. Plaintiff disclaimed knowledge of the contract between Frank and defendant, or that the beets were being delivered to defendant when loaded on the cars. The rule of the Steelsmith case is applicable to the situation and precludes an inference of knowledge on plaintiff's part of the existence of defendant's contract and its terms simply from the fact that he knew Frank raised sugar beets and must needs sell them to some sugar factory.

We think the record shows that plaintiff's rights under the mortgage clause in the lease must be postponed to defendant's right under the contract with Frank because the finding should have been that defendant was a subsequent good-faith purchaser. But since

the extent to which defendant was thereby protected was not litigated in the court below and not argued here, we refrain from expressing an opinion as to whether payments or advancements made under the contract after the filing of the lease take precedence of plaintiff's claim or must be subordinated thereto. It, however, seems proper to say that to constitute payments on the contract they must be such as are stipulated for therein.

Order reversed.