## ETHEL O'CONNOR v. J. C. PENNEY COMPANY.[1]

January 23, 1942.

No. 33,005.

*Leo J. Seifert,* for appellant.

*Dougherty & Flynn* and *Frundt & Morse,* for respondent.

GALLAGHER, CHIEF JUSTICE.

Action to recover damages for injuries sustained by plaintiff when she slipped and fell on the floor of defendant's store. The jury returned a verdict of $900 for plaintiff, and she appeals from the judgment entered pursuant to an order granting defendant's motion for judgment notwithstanding the verdict.

On March 15, 1939, plaintiff entered defendant's store to buy some material for a smock. She went behind the counter to examine the materials and was returning to the main aisle when, as she rounded the inside corner of the counter, her left foot went out from under her and she fell to the floor. She testified that there was dirt and gravel on the floor which stuck to her hands when she got up and that the place where she slipped was shiny and slippery as if somebody had waxed it. She noticed a streak about a foot long where her foot slid. The floor between the

[1]Reported in 2 N. W. (2d) 419.

counters where she slipped was described by her as having a harder, shinier surface than that in the main aisle, which was worn down.

Defendant maintained its floors with Myco Sheen, a liquid compound manufactured by the Masury-Young Company. A representative of that company testifying for defendant described Myco Sheen as a combination of gums and solvents designed to clean and preserve the floor and to control dust. He further testified that around 18,000 retail stores in the United States use it. According to the testimony of defendant's witnesses, an application of Myco Sheen had last been given the floor two months before the accident. It was, they testified, put on with an ordinary mop, rubbed into the floor, and then gone over with a dry mop. Each evening the floor was swept with a dry yarn mop to remove dust and dirt.

Plaintiff does not claim that defendant was negligent in choosing Myco Sheen for the maintenance of its floors. Certainly any such claim would have no support in the record. Plaintiff, however, does claim that defendant was somehow negligent in the manner or means of applying it. The trial court decided that the only proof of negligence was that the floor was slippery and that, under Dunham v. Hubert W. White, Inc. 203 Minn. 82, 279 N. W. 839, such proof is, as a matter of law, insufficient. The court therefore ordered judgment for defendant notwithstanding the verdict. The single question presented on this appeal is whether there is any evidence of defendant's negligence reasonably tending to support the verdict.

It is plain that the law imposes a duty upon the proprietor of a store or shop to exercise due care for the safety and protection of customers. McIntyre v. Holtman, 193 Minn. 439, 258 N. W. 832; Dunham v. Hubert W. White, Inc. *supra*. The crucial question is whether evidence of slipperiness, creating what the jury might find to be a dangerous condition, is sufficient proof of a violation of that duty. In the Dunham case, plaintiff slipped on a floor on which hard wax had been applied. It was described as highly

polished and very slippery. There no claim was made of negligent application. The properties of hard wax are commonly understood to produce a highly polished and slippery floor surface. Obviously, therefore, proof of the existence of such condition would not be proof of a lack of due care in its application. Recovery was sought on the sole theory that it is negligent to choose a floor material that is in its nature slippery. That theory of liability was rejected under the circumstances of that case, and in this respect our conclusion is supported by decisions of other states. Bonawitt v. Sisters of Charity, 43 Ohio App. 347, 182 N. E. 661; Smith v. Union & New Haven Trust Co. 121 Conn. 369, 185 A. 81. In the absence of additional factors from which an improper application or maintenance may be inferred, the benefits attendant upon the use of a standard floor product normally outweigh the inevitable risk to the public. To hold otherwise would practically make the store or shopkeeper an insurer. But, as indicated, the rule of the Dunham case was not intended for unqualified application. "A standard which requires only conduct proportionate to the circumstances and the risk seldom, if ever, can be made a matter of absolute rule." Prosser, Torts, p. 287. At any rate, since no point was made of improper application of the wax, this court in the Dunham case was passing upon a different question than is before us now.

Here we must decide whether there is any evidence which taken most favorably to plaintiff is reasonably sufficient to prove that defendant was negligent in the manner of applying Myco Sheen to its floors. The testimony introduced on behalf of defendant showed that Myco Sheen when properly applied gives the floor a gritty feeling and does not make it slippery. In view of that testimony, is not evidence that the floor was actually slippery ground for an inference that defendant improperly or negligently applied it? We think so. Moreover, there was testimony to the effect that defendant had not complied with that portion of the instructions issued by the manufacturer directing that the yarn mop which defendant used to sweep dust and dirt from its floors

should be filled once a week with one cup of Myco Sheen. The only direct testimony in the case as to the effect of this violation was given by a representative of the manufacturer, who testified that it would not tend to make the floor slippery. Indeed, "it would be just the reverse, that the broom would not sweep the floor as clean and would leave sort of a film on the floor. The. reason that cupful is put on the floor is to hold the dust and wipe the floor cleaner. That is the only difference." However, in view of plaintiff's testimony that the floor where she fell was slippery, we think that a fact question was presented as to whether the Myco Sheen was properly applied.

In McIntyre v. Holtman, 193 Minn. 439, 258 N. W. 832, an inference of improper application of oil to defendant's floor was drawn from the fact that there was a film of oil at the place where plaintiff fell, the floor there being less worn. Compare, also, Taylor v. Northern States Power Co. 196 Minn. 22, 264 N. W. 139; Driscoll v. Bob Wallace Merc. Co. 197 Minn. 313, 266 N. W. 879. In Phelps v. Montgomery Ward & Co. 231 Mo. App. 595, 107 S. W. (2d) 939, a verdict for plaintiff was upheld in a case where defendant's floor was maintained with Myco Sheen; and, although the floor did not have the general appearance of being slick, at the corner of the counter where plaintiff fell there was a slick spot where there appeared to be an excessive quantity of a dirty, greasy looking substance.

We think the trial court was right in submitting the issue of defendant's negligence to the jury but erred in setting aside the verdict and granting defendant's motion for judgment notwithstanding the verdict.

Judgment reversed.

STONE, JUSTICE (dissenting).

Such deviation as there was from conformance with the manufacturer's directions could not have created any hazard. Such is the evidence, and all of it. Hence I fail to find anything from which to infer reasonably that defendant was guilty of any negligence contributing to plaintiff's injury.